[Crim. No. 13940.   Second Dist., Div. One.   Apr. 2, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. NATHANIEL LEE BOOTHE, Defendant and Appellant.

Dennis R. Dubrow, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery.

In an information filed in Los Angeles on April 20, 1965, defendant was charged with robbing Walter McCoy and Langendorf Bakery of about $123 on or about March 8, 1965. Further it was charged that defendant at the time of the commission of the offense was armed with a deadly weapon namely, a gun. Defendant pleaded not guilty. In a jury trial defendant was found guilty of robbery in the second degree and further it was found that he was not armed at the time of the commission of the offense. Defendant was sentenced to the state prison on August 4, 1965. A division of this court granted defendant's application to file a notice of appeal on May 25, 1967, and such notice of appeal was filed on June 8, 1967.

A résumé of some of the facts is as follows: Walter McCoy, a driver-salesman for Langendorf Bakery, at about 3 p.m. on May 8, 1965, made a delivery and pick-up stop at Bill's Food Market in Compton. After having filled an order for merchandise, McCoy collected about $25 from Mrs. Wong, the wife of the owner of the store. McCoy put the money in his pants pocket and went outside and into his parked delivery truck. He chatted very briefly with a competitor bakery truck driver and then turned and saw defendant standing at the door of his truck. Although the day was a warm one, defendant was dressed in a three-quarter length light-colored trench coat, tight-fitting trousers and a narrow-brimmed hat. Defendant said to McCoy, "Don't move or I'll shoot. And if you think that I won't shoot, why, move and find out." While making the statement defendant simulated the holding of a gun, his right hand being concealed under the trench coat. McCoy thought that defendant was armed with a gun. Defendant then said to McCoy, "Well, now, don't move fast, but take the money out of your pocket and deposit it on the floor of the truck, and then go back where you were and I'll get the money from there." McCoy then placed about $123 in currency from his pants pocket on the floor of the truck. Defendant picked up the money and left.

Mrs. Wong testified that she had seen defendant in the store on several other occasions, that he had been in on that morning (May 8, 1965), and at the time just prior to the robbery was exchanging a purchase which he had made in the morning, and that McCoy was then placing bread in the racks at the store; that defendant was near at hand when she paid

McCoy and that she saw defendant at the door of McCoy's truck. There was no doubt as to defendant's identity either by McCoy or Mrs. Wong. There were some differences in the testimony with reference to the color of the trench coat as pointed out by defendant in his brief. McCoy stated that it was "very light in color"—"it wasn't white. It was a little off-white. Beige is a good—light beige would be a good description." Mrs. Wong testified that the trench coat was "light color, almost white." Defendant testified that his coat was white and his hat was a Homburg with "about a five-inch brim on it."

Defendant further testified that he was not the robber in question although he admitted having been in the store on March 8, 1965. In response to a question by the judge, defendant stated that the last steady job he had held prior to March 8th was with a delivery trucking company, that he then earned $125 per week. That employment was terminated three months prior to March 8th. Thereafter, that defendant worked with his father and earned between $85 and $95 per week and that he had sold a car about two weeks prior to March 8, 1965, and had received $400 for it. Defendant's father testified that his son's coat was white and that it had been stolen from his (the father's) pick-up truck.

■ Appellant now contends that it was error for the trial judge to admit evidence with reference to appellant's lack of steady employment and income, that the judge made improper comments at the time the jury requested that a portion of the testimony be read back to them. There is no merit to the assertions of appellant.

The judge asked the defendant at the conclusion of his testimony whether he still owned the trench coat and defendant responded in effect that it was still around the house. Defendant was then asked, "Now, on this day, March 8, sir, were you working?" Defendant responded by saying that he was working on a lady's car. The judge then asked, "When was the last time you held a steady—" and appellant's counsel made a motion for a mistrial (out of the hearing of the jury) upon the ground that the appellant had been doing time in jail. The court indicated clearly that it was not interested in anything except as to whether the defendant was working. The motion for a mistrial was denied. The jury was then told by the judge:

"Ladies and gentlemen of the jury, I want you to understand completely that when I ask a question or questions, it is not with any view certainly to cross examine a defendant or

any other witness that I may ask a question of. It is only to ask a question that I think has not been asked by anyone else.

"And certainly I want to impress upon you that I have absolutely no opinion whatsoever as to the guilt or innocence of this defendant, and I don't wish to convey that I do have such an opinion merely because of the fact that I may ask a question or two."

Some questions then followed by the judge, without objection, which brought out that appellant worked for his father, as a mechanic, that the last steady job appellant had was with Burgess Delivery Trucking Company at which he was paid $125 per week, that such steady employment was about three months prior to March 8th. Counsel for appellant then brought out from appellant that for the last three months appellant was making between $85 and $95 per month, and that he had received $400 for a car of his own which he had sold.

True it is that in some situations evidence that a suspect suffered from lack of money is not admissible in a robbery case. In this case there was no attempt to introduce evidence to the effect that appellant was behind in his rent, that he had payments to make and no money with which to pay, there was no evidence of sudden unexplained possession of money or that he was impecunious at the time of the robbery. Circumstantial evidence could well be introduced under many different situations but here the evidence is not circumstantial—it is direct, positive and unequivocal that appellant was the robber. There is no evidence that appellant was lacking in funds. Even, however, if it were error, it would not be prejudicial error. (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].)

▇ Secondly, appellant asserts that the judge was "facetious" during a colloquy between the judge and the foreman of the jury when the jury wanted certain testimony read to them.[1] Appellant states in effect that the judge's statements

---

[1]"THE COURT: Mr. Hanson, I received a note from you saying that the jury wants some testimony reread, and as I understood the note, you want the testimony of Mr. McCoy, direct examination and cross examination; also of the defendant, direct and cross examination.

"THE FOREMAN: Right, sir.

"THE COURT: Now, sir, that will take approximately an hour and a half. I'm not telling you that to discourage you in the least, but I just want to know this. Is it at all possible—do you have any particular points in mind that you were trying to find out to differentiate in respect to what each of these persons said with respect to a particular point?

to the foreman indicated to the jury that he deemed the testimony in question to be irrelevant.

A fair reading of the transcript indicates to us that the judge was not being waggish, attempting to be funny, jesting or in any manner indicating that the testimony requested was not to be taken seriously. At the trial level appellant injected the matter of his race into the problem of his identification by asking the victim whether he had been previously robbed in the neighborhood by "colored gentlemen" and whether he,

---

Perhaps we can find that in the record and save some time.

"Now, if you don't feel that way and you really want all of the testimony reread, that is your privilege, and I will comply with your request.

"THE FOREMAN: Well, primarily our problem is in the dress of the defendant and the evidence given by him, and the evidence given by the parties as to what he was wearing. That is one phease [*sic*].

"THE COURT: Well, do you have another phase, also?

"THE FOREMAN: Well, one other thing is how he was identified, as to whether he was by just his dress or by looking at his face and saying that that was he.

"THE COURT: Do you think you can possibly find these areas, Mr. Reporter?

"THE REPORTER: Yes, your Honor.

"THE FOREMAN: Yes, we would like to hear what McCoy's direct statement was identifying the defendant.

"THE COURT: If you can find it that way, why, fine.

"THE FOREMAN: One further question. We'd like to know what time of day he bought this hat. Was it at Desmond's?

"THE DEFENDANT: Silverwood's.

"THE COURT: No, wait a minute. Just a minute. If it is in the record, we will find it and we will read it.

"THE FOREMAN: I think that covers it.

"THE COURT: I want to assure you that if we don't find what we want doing it this way, we will read whatever you want, even if it means reading it all. So don't be alarmed about it.

"I think maybe this is taking much longer than it would if you just read the testimony, frankly. I honestly feel that way. I don't know, but I think you better start at the beginning.

" (Record read by the reporter.)

"THE COURT: You may stop there. It is a good place to stop.

"Ladies and gentlemen, we can't complete this reading of the testimony this afternoon. We will complete it tomorrow morning, start at 9:00.

"If you get here before 9:00 in the morning, resume your deliberations, and then at 9:00, why, we will continue with the reading of the testimony.

"We will recess until 9:00 tomorrow morning.

"THE COURT: The record may indicate the defendant is present with counsel, the Deputy District Attorney is present, and the jury is fully constituted and in the jury box.

"Good morning, ladies and gentlemen.

"Mr. Werther, you may finish reading the testimony.

" (Continuation of reading the record by the reporter.)

"THE COURT: All right. Mr. Hanson, is there anything else that you desire, sir?

"THE FOREMAN: One juror would like to have the testimony just at the start of where Mr. McCoy mentions as he turns in his truck and allegedly sees the defendant.

the victim, because of the previous robberies had some antagonism against appellant, a colored man. McCoy answered that he had no antagonism whatsoever against appellant because of his color.

The judge was patient, fair and just in the trial of this case and counsel serve no useful purpose in the overall administration of criminal justice by attempting to castigate him.

The judgment is affirmed.

Wood, P. J, and Lillie, J., concurred.